**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy M. O'Daniell,<br><br>                          Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>                          Defendant. | No.  CV-20-01303-PHX-SPL<br><br>**ORDER** |

Plaintiff Timothy M. O'Daniell seeks judicial review of the denial of his application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). (Doc. 1) Plaintiff argues that the Administrative Law Judge ("ALJ") erred by rejecting his subjective complaints. (Doc. 16 at 3). He seeks a remand for benefits, or in the alternative, a remand for further proceedings. (Doc. 16 at 23).

Before the Court is Plaintiff's Complaint (Doc. 1), Opening Brief (Doc. 16), Defendant Commissioner of Social Security's Answering Brief (Doc. 21), Plaintiff's Reply Brief (Doc. 23), and the Administrative Record (Doc. 12) ( henceforth "R."). Because the Court finds no error on the part of the ALJ, it will affirm the Social Security Administration's decision.

**I.     BACKGROUND**

Plaintiff filed an application for Title II period of disability and disability insurance benefits on February 9, 2015, alleging disability beginning July 19, 2014. (R. at 180–81). The Social Security Administration denied the claim initially on June 10, 2015. (R. at 106–

10). Plaintiff requested reconsideration of the initial determination on July 17, 2015. (R. at 113). The Administration denied reconsideration on November 6, 2015. (R. at 114–18). Plaintiff requested a hearing before an ALJ which was held on April 28, 2016. (R. 35–80). On May 27, 2016, the ALJ issued an unfavorable decision (R. at 18–30), which the Appeals Council upheld on September 22, 2016. (R. at 1–4). Plaintiff sought judicial review on November 23, 2016. (R. at 720, *O'Daniell v. Colvin*, 2:16-cv-04072-JAT (D. Ariz. November 23, 2016)). This Court remanded the matter for further administrative proceedings on October 24, 2017. (R. at 723–29, *O'Daniell*, 2:16-cv-04072-JAT, ECF Nos. 19, 20 (D. Ariz. October 24, 2017)). The remand hearing was held May 16, 2019. (R. at 604–717). The ALJ issued an unfavorable decision on September 5, 2019 (R. at 581–98), which the Appeals Council upheld on May 1, 2020. (R. at 572–77).

The ALJ found Plaintiff had a "severe" impairment of multilevel degenerative disc disease. (R. at 586). The ALJ found Plaintiff was capable of light work, except he could only

> "lift and carry 20 pounds occasionally and 10 pounds frequently; and can sit for 6 hours in an 8-hour workday; can stand and walk for 6 hours in an8-hour workday, with the option to sit or stand after 30 minutes for a 1-2 minute break; can never climb ladders, ropes, or scaffolding; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; must avoid concentrated exposure to extreme cold; and must avoid concentrated exposure to workplace hazards, such as a dangerous machinery, unprotected heights, and things of that nature.

(R. at 589). The ALJ gave great weight to the opinion of the State Agency DDS consulting doctor because of his familiarity "with the Social Security program and its requirements." (R. at 595). The ALJ discredited Plaintiff's testimony regarding his pain, symptoms, and level of limitation. (R. at 593). A vocational expert testified that Plaintiff could perform the work of an office helper, price marker, photo copy machine operator, and mail clerk. (R. at 597). The ALJ concluded Plaintiff was not disabled from the alleged onset date to the date last insured. (R. at 597–98).

Plaintiff alleges the ALJ erred by improperly rejecting his testimony concerning

pain, symptoms, and levels of limitation. (Doc. 16 at 3).

## II. LEGAL STANDARDS

A person is considered "disabled" for the purpose of receiving social security benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's decision to deny benefits should be upheld unless it is based on legal error or is not supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674–75 (9th Cir. 2017). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 675. The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she or] he did not rely." *Id.* The Court will not reverse for an error that is "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [his] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

## III. DISCUSSION

Plaintiff argues the ALJ erred in finding his subjective complaints were inconsistent with the medical evidence and other evidence in the record. (Doc. 16 at 9). Defendant argues the ALJ did not err, because the subjective complaints were not entirely consistent with the record and the ALJ made specific findings on the record to support his ultimate decision. (Doc. 21 at 3).

In evaluating a claimant's testimony, the ALJ is required to engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must decide whether the claimant has presented objective medical evidence of an impairment reasonably expected to produce some degree of the symptoms alleged. *Id*. If the first test is met and there is no evidence of malingering, the ALJ can reject the testimony regarding the severity of the symptoms only by providing specific, clear, and convincing reasons for the rejection. *Id*. The reasons must be supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). The ALJ need not engage in "extensive" analysis but should, at the very least, "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [his] conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (internal citations omitted). Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but concluded his statements as to the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (R. at 590). There was no finding of malingering. Thus, the Court looks to see whether the ALJ's reasons for rejecting Plaintiff's testimony were specific, clear, and convincing.

In evaluating Plaintiff's symptom testimony, the ALJ found it to be inconsistent with the severity of his conditions shown in his medical records for the reasons that follow. (R. at 590–94). The ALJ specifically referred to x-rays, MRIs, and an EMG study. (R. at 591–93). The ALJ determined these tests show Plaintiff has degenerative disc disease but that it is milder than he complained. *Id.* The ALJ found the conditions indicated in the medical records would limit Plaintiff to light work, contrary to his testimony of "severely limited functioning." (R. at 593). The ALJ further found the records from Plaintiff's physical examinations contradict his testimony that his standing and walking abilities are limited. (R. at 591–93). The ALJ also specifically referenced records showing treatment was conservative and improved his symptoms. (R. at 592–93). Furthermore, the ALJ found Plaintiff's daily activities inconsistent with his testimony regarding his limitations. (R. at

591–94). Plaintiff exercises multiple times a week, participates in physical therapy, and travels to see his family. *Id.* The ALJ also specifically noted Plaintiff's entrepreneurial activities were inconsistent with his complaints; he purchased a second business while he was allegedly unable to maintain his first. (R. at 594). Last, the ALJ found Plaintiff's testimony was unsupported by any opinions from treating physicians, consultative examining physicians, and state DDS consultants. (R. at 594–95).

Furthermore, when there are conflicts within the record, it is the ALJ's responsibility to resolve them. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). Here, there is some conflict within the objective medical records, but the ALJ resolved them by concluding that the weight of the medical records did not corroborate Plaintiff's testimony. (R. at 593).

1. *Plaintiff's medical records*

The Ninth Circuit has held that "once the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)). However, the ALJ may consider medical evidence as a factor. *Burch*, 400 F.3d at 681.

As outlined above, Plaintiff's medical records support a finding of multilevel degenerative disc disease. (R. at 586) The ALJ specifically cited to Plaintiff's MRI, x-ray, and EMG results that supposedly show his condition is not as severe as he claims. (R. 300–79, 557, 1925) The tests the ALJ cited do in fact show Plaintiff sustained a prior injury to his spine, (R. at 300) and that he has "severe spinal compromise," (R. at 314) a "moderate degree of neural foraminal narrowing" on the right side, (R. at 346) and "mild cord deformity." (R. at 350). Some MRI results show his spinal canal compromise is "mild to moderate." (R. at 560–62). The test records appear to contradict themselves. They do not fully corroborate Plaintiff's testimony, however, they do not necessarily contradict it.

The ALJ also referenced Plaintiff's physical exams (R. at 592), where his gait appeared normal, he had good muscle bulk, normal reflexes, sensation in his upper extremities, "negative straight leg raising," and could stand, walk, and balance. (R. at 443, 445–47, 453). The notes from the physical exams show his cervical range of motion is "limited," and that "when [he is] distracted [he] does better with movements." (R. at 445). They show his gait was normal, but he was "hesitant to do these activities," meaning the movement tests. *Id.* He can stand, walk, and balance but his range of motion is limited in his arms and hands because of shoulder pain. (R. at 446–47). The range of motion in his lower body is "okay." (R. at 447). The physical examinations do not corroborate Plaintiff's testimony regarding the severity of his pain; they show he does not have full motion but is able to function.

The objective medical records do not fully corroborate Plaintiff's testimony, however, as stated, the ALJ's credibility determination cannot rely on the medical records alone, so the Court must turn to the other factors the ALJ cited.

*2. Plaintiff's course of treatment*

The ALJ may consider the effectiveness of medication and treatments. 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). When a claimant responds "favorably" to conservative treatment the ALJ may discount his testimony about the severity of the condition. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) and *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir.1999)). Physical therapy is a form of conservative treatment. *Tommasetti*, 533 F.3d at 1040.

The ALJ cited medical records showing Plaintiff responded favorably to physical therapy. (R. at 329, 331, 341). Notes from Plaintiff's therapy appointments state "overall he feels better after treatments but is nothing long lasting," (R. at 329) and he "feels pretty good today but still feels tightness to neck and back." (R. at 331). The records show his response to physical therapy was favorable. However, the record also shows a heavy use

of pain medication.

The ALJ cited medical records showing Plaintiff took "Motrin, Advil or whatever I could get from over-the-counter pharmacy … because I have no money to see a private doctor." (R. at 270–71). However, other later records show Plaintiff was taking Tramadol, a narcotic, daily. (R. at 424, 1380). He was prescribed other narcotics for shorter periods of time, namely hydrocodone. (R. at 1067, 1462). Plaintiff has had at least one trigger point injection treatment and one steroid injection. (R. at 445, 1379). "Limited injections" when paired with physical therapy and minimal medication are considered part of conservative treatment. *Hanes v. Colvin*, 651 F. App'x 703, 705 (9th Cir. 2016). Treatment with narcotics, when paired with physical therapy or other conservative treatments "does not violate the conservative treatment rule." *Foos v. Colvin*, No. CV-15-00154-PHX-JZB, 2016 WL 1253394, at *6 (D. Ariz. Mar. 31, 2016) (internal citations omitted).

Plaintiff argues that narcotics are not considered conservative treatment, citing *Corless v. Comm'r of Soc. Sec. Admin.*, 260 F. Supp. 3d 1172, 1177 (D. Ariz. 2017). (Doc. 16 at 15). The claimant in *Corless* did not always respond to the opioids she was prescribed, and she also received depo-medrol injections, used topical gel, and went to the emergency room for her pain on multiple occasions. *Id.* She also responded poorly to physical therapy. *Id.*

Plaintiff's case is not so severe as the symptoms described in *Corless*. The Court determines the ALJ did not err in using course of treatment evidence in discrediting Plaintiff's testimony because physical therapy resulted in some relief and he reported pain medications were "helping." (R. at 427).

*3. Plaintiff's daily activities*

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work

setting[.]" *Parsons v. Colvin*, 111 F. Supp. 3d 1009, 1018 (D. Ariz. 2015) (internal quotation omitted). "[T]he ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch*, 400 F.3d at 681.

In rejecting Plaintiff's testimony, the ALJ specifically referred to his abilities to perform moderate stretching exercises, travel back and forth between Arizona and California, manage his laundromat business, perform maintenance tasks, attend graduate school, and to his purchase of a second business that required performance of janitorial contracts. (R. at 592–94).

The ALJ erred when he discredited Plaintiff's testimony due to his ability to perform stretching exercises and work out two to four times a week. (R. at 443). When physical activities do not take up a substantial portion of the claimant's day, they should not be used to discredit his testimony. *McNutt v. Astrue*, No. CV10-2612-PHX-DGC, 2012 WL 79085, at *4 (D. Ariz. Jan. 11, 2012) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The ALJ potentially erred when he discredited Plaintiff's testimony due to his pursuit of graduate studies because Plaintiff claims he was no longer attending school after the alleged disability onset date. (Doc. 16 at 17). The actual record is unclear as to when Plaintiff halted his studies, though it could plausibly be around 2013, which is prior to his alleged onset date of July 19, 2014. (R. at 180–81, 650–59). However, these errors are harmless because the record shows Plaintiff still maintains a fairly active lifestyle.

Plaintiff traveled back and forth between Los Angeles and Yuma frequently to see his wife and children. (R. at 360, 440–43). He also owned and managed a coin-operated laundromat; however, he was unable to keep up with the repairs needed and is in the liquidation process. (R. at 442). He has indicated to treating physicians that physical therapy has helped. (R. at 443).

Although he liquidated his laundromat business, there was a time when he was working there, performing repairs and other hard labor for "more than ten hours a day." (R. at 42–44, 668–69). He also purchased a second business during 2014, a janitorial service, and attempted to run both that and the laundromat. (R. at 666–71). The janitorial service also

failed because he could not keep up with its demands. *Id.* Plaintiff's testimony about his businesses contradicts his own testimony about his limitations.

Plaintiff travels "back and forth" between Yuma and Los Angeles. (R. at 440, 646–47). He testified that it "has been the case for several years" that his wife lives in Los Angeles with two of their children. (R. at 646). Evidence of extended, independent travel may be properly used to discredit claimant testimony. *See Tommasetti*, 533 F.3d at 1040 (claimant traveled to Venezuela for an extended period of time to care for his sister); *see also Arnett v. Comm'r of Soc. Sec. Admin.*, No. CV-16-03296-PHX-JJT, 2018 WL 2057634, at *3 (D. Ariz. May 3, 2018) (discrediting plaintiff's symptom testimony due to "substantial travel" to California and Maine). Plaintiff travels frequently, which contradicts his testimony about his limitations. The Court concludes the ALJ did not err when discrediting that testimony due to Plaintiff's activities.

    *4. Physician opinions*

While the opinion of a treating physician is generally "entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012 (internal citations omitted). "The weight afforded a non-examining physician's testimony depends on the degree to which [he] provide[s] supporting explanations for [his] opinions." *Id.*

The ALJ gave weight to the consulting physicians who did not treat or examine Plaintiff "because they are consistent with the medical evidence as described herein, consultative opinion evidence, and the conservative, effective treatment." (R. at 595). The consulting physicians cited to medical records including MRI records, physical examination records, and work history. (R. at 81–89, 93–104). The examining physician examined Plaintiff on May 15, 2015 and found that he had no limitations due to his conditions, though the physician noted Plaintiff suffers pain in his back and neck. (R. at 262–68). The examining and consulting physicians' opinions were consistent. These opinions are also consistent with the medical records showing Plaintiff's spinal canal is

compromised but does not greatly affect his movements. (R. at 443, 445–47, 453, 560–62, 592). When opinions of non-treating or non-examining physicians are "'consistent with independent clinical findings or other evidence in the record,' those opinions may serve as substantial evidence." *Nevarez v. Colvin,* No. CV-12-2586-PHX-LOA, 2014 WL 1202963, at *7 (D. Ariz. Mar. 24, 2014) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). Therefore, the ALJ did not err when he gave great weight to the state agency consulting physician's opinion, because those findings were consistent with the independent medical record.

### IV. CONCLUSION

It is in this Court's discretion to reverse and remand for an award of benefits or further proceedings. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Because the Court finds the ALJ's rejection of Plaintiff's testimony was accompanied by specific, clear, and convincing reasons supported by substantial evidence, the Court finds no error on the part of the ALJ and will affirm the Social Security Administration's decision denying Plaintiff's Application for disability insurance benefits.

**IT IS ORDERED affirming** the September 5, 2019 decision of the Administrative Law Judge, (R. at 581–98), as upheld by the Appeals Counsel on May 1, 2020. (R. at 572–77).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and **terminate this action**.

Dated this 13th day of April, 2021.

Honorable Steven P. Logan
United States District Judge